You may proceed. Good morning, Your Honors. May it please the Court, Daniel Echevarria on behalf of Petitioner Zechariah Tahir Mohamed. The decision below should be vacated because the IJA retroactively determined in 2021 that Mr. Mohamed was competent in 2020, even though there was no contemporaneous evidence from 2020. Mr. Mohamed credibly testified that he saw and heard demons in the courtroom during his final merits hearing in 2020. Remarkably, the IJA determined that there was no need to conduct a new merits hearing in 2021. Instead, even though mental conditions are admittedly fluid and change over time, the agency determined that his competency in 2021 was as positive as the 2020. But agencies must turn square corners and follow basic procedure. As a matter of law, they must base their conclusions on the evidence. Here, there was no contemporaneous evidence from 2020. And the evidence of competence in 2021 was based on new medication that Mr. Mohamed was not taking in 2020. Mr. Mohamed is entitled to a due process right of a fundamentally fair hearing. He did not receive that with respect to his merits hearing in 2020 because of his incompetence. What about Dr. Crowell's agreeing with the he was competent then? So Your Honor, Dr. Crowell actually did not make a specific finding in his report in 2020. So in fact, he had stated that there was no evidence or sufficient documentation for him to make such a finding. I know that during the transcript of the hearing, he did, I believe, say at one point that he may think or believe, but he also repeatedly also noted that he did not have enough records and he would need to review those records, which frankly there were none, in order to make that determination. Is Dr. Crowell's I agree with it and I believe enough? I don't believe so, Your Honor, because again, the IJ and the BIA also specifically relied on his reports, his written reports specifically. That's the evidence that the IJ specifically invoked in his decision and that the BIA affirmed on. So if you look at the report, the report makes a determination that he was incompetent, Mr. Muhammad was incompetent in 2017 and 2018 and was competent in 2021, but there is that gap of 2020, which is the crux of what we're here today to determine as the BIA had initially remanded, was Mr. Muhammad competent or not during that final merits hearing? Why doesn't the IJ's own observations matter? We rely in the criminal context on counsel and the court to raise competency concerns, to view the defendant, and here we have a situation in which we had the same IJ in both and the IJ said, well, I thought he was competent. I mean, he asked questions, he was engaged in the proceedings, et cetera. So Your Honor, a couple of things. So in the immigration context, it's actually on the IJ to actually determine if there is an indiscriminate incompetence. And so the issue here was during that first hearing, the IJ made no determination whatsoever, even though Mr. Muhammad had submitted, there was, first of all, the written documentation from the PSR report in 2017, for example, as well as Mr. Muhammad's own testimony talking about how he was on medication, how he was going through mental breakdowns recently and things like that. And then on remand, the IJ did rely on his observations, but notably the way in which he talked about those observations was, again, sort of fighting the premise that the BI had already remanded on, specifically saying that, well, I didn't see there was any indiscriminate incompetence, even though the BI had specifically remanded on that specific point. So I agree that that may be one of the factors, but on the other hand, we have no contemporaneous evidence, which I think is the critical issue here, because we're talking about a retroactive competency hearing. There's no sufficient medical records whatsoever about that time period. Instead, all we have is the IJ's observations, which apparently are still based on the idea that there were no indiscriminate incompetence to begin with, and then Mr. Muhammad's own testimony that was credible, where he said that I saw and heard demons in the courtroom that were very loud and very distracting, you know, and he admittedly said that that would have affected his ability to properly answer questions or fully process what was happening in the context of that hearing. Can I ask you, why does it matter legally? And the reason why I ask that question is the prejudice question, which is, you may well be right, and assuming you are right, he got to bring in all this evidence in 2021. It wasn't just about competence. There was additional evidence submitted. And so why doesn't that sort of make it so it just didn't make a difference? He basically got a new hearing. So I think, Your Honor, the critical thing, again, is for the prejudice point here, we're talking about the outcome may well have been different. This isn't a situation like in the criminal context, where it's like Brady or a sentencing issue, where there's an issue of harmless, or there's a harmless error standard, or that there has to be but-for causation. I think that's the Brassic case and the cases along those lines that make that point, that there doesn't need to be but-for causation. It just has to be that the outcome possibly could have been different. And here, we had, while there was evidence introduced in 2021 regarding all his mental health stuff, that could provide additional context to his merits claims, as well as additional country conditions that were provided by his counsel, now that he had that representation, that none of those, none of that information was actually considered with respect to his merits hearing. Because, again, the IJ simply determined, well, he must have been competent in 2020 because he's competent today, and then decided there was no need to conduct a new merits hearing based on that issue. So that all that. Was there anything else that he wanted to submit but wasn't able to at the later hearing? Just factually now. Sorry, in the 2021 hearing? Yeah, in the competency hearing. Was there any evidence that he wasn't able to present either in 2020 or 2021 that he wish he would have been able to present? Well, Your Honor, first of all, in the 2021 hearing, I believe he did testify, he submitted testimony that was credible regarding his mental status and sort of his experience of the 2020 hearing. But notably, he was not able to provide any testimony as to the actual merits of his claims, which, again, goes back to the issue that in 2020, he had, he did testify about his fears in order to get his relief under the Convention Against Torture and the waiver claim that he had. And the IJ found him not credible specifically because his statements that he made in 2020 were inconsistent with statements he made in 2018, which again is a year that everyone seems to, doesn't dispute, he was incompetent on. So again, he wasn't able to provide that testimony in 2021 to sort of rehabilitate and be able to fully present and advocate for his merits claims in 2021. Extending Judge Strauss's point, would you face ARC 2007? It's a Mohammed case. Mohammed v. Gonzalez in 2007. Are you familiar with that? Yes, Your Honor. Okay. Face it because it says the competency hearing does not matter if the petitioner answers the charges, testifies, and arranges for witnesses. I'm paraphrasing the case. That's the holding of the case. Yes, Your Honor. So face the case. Why doesn't that control this case? Well, Your Honor, the issue there in the Mohammed case was, and I believe you wrote that opinion, was that the, there's the initial issue of trying to find whether the petitioner had shown any indicia of incompetence. And here we already, the BIA already determined there were in fact indicia of incompetence. So we're already a step beyond that Mohammed case here. Today we're trying to determine, okay, now that there were indicia of incompetence, was he in fact competent or not in 2020? And the problem on top of that is that this is further complicated by the fact that we're trying to do this nearly a year after the fact. So we have to look to, like we do in the criminal context, in the federal habeas context, in Reynolds or whatever it may be, is there sufficient contemporaneous evidence from the time of the original proceedings? And another follow-up, which is, now the hearing was for two and a half hours, right? The I.J. was there with him for two and a half hours, right, to base these observations that I.J. talks about, right? Yes, Your Honor. So doesn't that make this yet a different case? I only know by cases we hear, but it seems that many cases don't last two and a half hours. Well, I'm not, I don't know if I can give you an average time how long an inmate can hear. Right, but talk to me about the two and a half hours. Yeah. So I think, Your Honor, the thing about that is, sure, again, that may help in terms of understanding what the I.J. was able to observe and all that. I think the issue is that we were running back into the problem that the I.J. did not fully make that inquiry in 2020, did not fully examine the issue, and then is trying to, a year later, essentially create a sort of patchwork thing of how do I ensure that this man was, in fact, competent in 2020? So regardless of how long it may be, I mean, obviously, if it's 30 minutes, that's probably less than a two and a half hour. But at the same time, if the I.J. is not paying attention to the issue, I'm not sure, frankly, what his observations could say if he's not able to fully understand exactly whether the man was competent or not. He wasn't even focused on that issue. I'd also like to point out to the—about the critical issue that the I.J. relied on the 2021 competency determination, because, again, the critical problem there was that as Mr. Muhammad testified, he had just switched to taking this new medication, Abilify, that's like an antipsychotic mood stabilizer. And he had specifically been talking about how that had been helping tremendously during the September 2021 hearing. He started that medication in April of 2021. And I think that, in and of itself, creates a sort of intervening cause that you can't draw the logical conclusion that if he was competent in 21, he must have been competent in 2020. Moreover, the—excuse me one second—moreover, the issue is, again, because he saw the demons and heard those demons in the courtroom, the Abilify also, he specifically said, helped sort of dull those voices or quiet those voices down. So that's directly affecting the issue that he was—he admittedly was suffering in 2020 and then was resolved at least in 2021. Now, as to the prejudice point, Your Honor, that you were going on, I think the other thing that we also want to point out is that some of the medical records that were introduced in 2021, Mr. Muhammad actually didn't—was not able to access himself. I think one of the records specifically talked about how he should not receive a copy of that report. And so it wasn't until he had that representation from counsel who was able to receive that report as a sort of third party and be able to introduce that to the IJ and put that into the record. So, again, that goes back to the fact that had he been able to introduce all this evidence about his mental status and his mental condition and the mental illness that he was suffering from, that in itself could have very well may have affected the outcome of the merits of his claims. And then, Your Honor, I think the other thing that I want to point out is that in—again, in 2018, there was the issue of—I believe he had—he obviously has a right to counsel that he can afford, not at the expense of the government. He essentially waived that right in 2018. And again, he was found incompetent into 2018. So this is sort of an issue of the entire issue of his competence and how it affected the procedures of his merits hearing is directly infecting the actual procedures of determining that issue. So again, I think the problem here is that you have a determination that he's removable. Now he's claiming the protections under the Convention Against Torture and the 209C waiver, I believe is the other relief he was seeking. And part of those claims were based on the fact that he is concerned about his mental status, his mental illness, and how that's going to be treated under the CAT claim. And as for the waiver claim, he's suggesting that this is an extraordinary and extremely unusual hardship based on his mental health and his mental illness. Now none of the evidence about his mental illness was at all considered from the IJ. Had that stuff been considered and been put into the record and the IJ had taken the time to, again, you don't have to write an exegesis on every single piece of evidence in the record. The IJ still needs to consider meritorious material evidence. And the IJ here did not do that. I see my time is running out. I'd like to reserve the rest for rebuttal, if that's okay. Very well. Thank you, Your Honor. Mr. Hayes, we'll hear from you. Good morning, Your Honors. Timothy Hayes on behalf of the Attorney General. Under 8 U.S.C. 1252a2c, the Court lacks jurisdiction to review any final order of removal against an alien who has been convicted of an aggravated felony. There is no dispute in this case that Petitioner has aggravated felony convictions. The Court does retain limited jurisdiction under the limited review provision to review constitutional claims or questions of law, and that's under 1252a2d. Under Wilkinson, which is a Supreme Court case, that would include application of a legal standard to undisputed or historical facts. Competency has long been viewed as a factual finding, and this factual finding is disputed here. Petitioner claims he was incompetent. The agency found him to be competent. So the application of a legal standard to undisputed facts is not implicated in this case. Now there are a couple of possibilities of legal error that Petitioner hints to in his opening brief. One is wholesale failure to consider evidence, which this Court has said could be legal error. But there is no wholesale failure to consider evidence in this case. The agency is entitled to a presumption of regularity in its decisions, and at our brief at footnote 10 on page 34, we list a bunch of case sites that shows that the I.I.J. considered all of the evidence in the record, particularly the I.I.J. listed all of the documentary evidence in the record. Does it make a difference that this is a CAT claim versus an asylum or a withholding of removal claim? No, I don't think so, Your Honor, because the issue of competency is going straight to the removal order. And now I understand that in the context of a CAT claim, in Nasrallah, the Supreme Court sort of said that was contingent, and it's attached to but not part of a removal order, but I don't think that matters here because they've waived the review of the merits of their underlying CAT claim in their brief. The issue they're raising is he should have been found incompetent and got a new hearing and sort of basically a do-over. So I don't think the Nasrallah exception is applicable. I think it would have to be under Wilkinson. The other possible legal error that's been raised is this issue about retrospective competency assessments and whether it requires contemporaneous evidence of competency at the time you're trying to evaluate it. Now to the extent that that legal error is coverable, it lacks merit on this record. Now, I know there's some discussion about Dr. Kroll qualifying a statement that Petitioner was competent in 2020, but I think the immigration judge, and in particular with all the other evidence of the record, could rely on that qualification as one piece of evidence to suggest he was competent. We definitely know he was competent in 2021. It's a question mark in 2020, but all indications are he probably was competent. At page 362 of the record, there is a copy of a psychological evaluation done by a nurse practitioner two days before that merit hearing. The evaluation is dated November 23, 2020, and the merit hearing was November 25, 2020. At that time, the nurse practitioner said he showed no symptoms of psychosis. He showed good insight and judgment, and he was doing well on his medication. Also at that hearing, the same I.J. ten months later, so the board remanded for a competency inquiry, the same I.J. who heard that hearing ten months before said he remembered the case. Petitioner's testimony to him at that time was very similar to how it was before. It was clear. It was lucid. He was able to answer his questions, so he believed him to be competent at the time. The other issue I want to bring up, and there was a statement made in the reply brief about whether Petitioner was in custody or out of custody. He was out of custody between December 2016 to spring 2017. His own counsel stated that at 279 in the record, and that was around the time frame where he was submitted to Mayo Clinic because he was intoxicated in a public park and was brought in and was having episodes of psychosis, so he definitely was out of prison or detention for a period of time, and that coincides with a period of time when he was deemed incompetent. The immigration judge in the record was trying to get to the fact that Petitioner, while he's detained, he was not using any illegal drugs, and his medical condition seemed to be improving. And unless Your Honors have any questions for me, I will rest. Thank you very much. Thank you for your argument. We'll hear rebuttal. Thank you, Your Honors. Just a few quick points. First, on the jurisdiction issue, the Court very much has jurisdiction because, again, this is like what my colleague invoked Wilkinson. The whole point of that in the Guerrero case is that you're applying undisputed facts to a legal standard. That's exactly what we're doing here. The legal standard under MAM or, as we do in other contexts for competency, is, you know, did he have a rational — was there enough evidence to support a finding that Mr. Muhammad had a rational understanding of the nature and object of the proceedings? Was he able to present evidence and advocate for his claims, which he was not? Secondly, there's also the due process issue. Again, for a retroactive hearing, is there sufficient contemporaneous evidence from the time of the original proceedings in order to conduct a retroactive competency hearing? Secondly, we also did not waive any of these claims because, again, as I mentioned, the issue of his competency and his mental health is directly intertwined with the CAT claim and the 209C waiver claim. As well, I think my colleague relied on a record from November 23, 2020, about a discussion with a nurse practitioner. Notably, the IJ&VIA did not rely on that record whatsoever, and so this is a — that becomes a Chenery problem where you can't — this Court cannot affirm on an entirely new ground that the IJ&VIA did not rely on. Finally, I think I just want to emphasize that a lot of our discussion that we had on my first time up here was talking about, you know, what could have happened, what could have been different. And there's a lot of speculation about how things could have been different, and that goes directly to the point of there is an issue of prejudice here because we just simply don't know what may well have been different. Again, there's the issue of tying his competency and his mental health, which, as this Court noted in Chauzy, mental health evidence directly can't inform the merits of those claims. There's the issue that he was — there was an adverse credibility finding that the IJ made in 2020 based on the inconsistencies of the testimony he gave in 2018 when he was inevitably incompetent. On the prejudice point, don't you bear the burden of proof showing that the proceedings may have been different? And if so, is it enough to say we don't know what would have happened? Again, I think the — my understanding of the standard, as the Court eschewed in Brassic and the other cases that it cites — and I can't remember them off the top of my head — is just that we just need to show that the error possibly could have affected the  And I believe here, based on what I've been going through, that we have sufficiently showed that. Finally, again, at bottom, this is an issue of process. There's a due process issue here. And we ask the Court vacate the decision below and remand for further proceedings. Thank you, Your Honor. Very well. Thank you.